**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YULIYA MIRETSKAYA, <br><br> Plaintiff, <br><br> v. <br><br> RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY *et al.*, <br><br> Defendants. | Civil Action No. 20-14856 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on two separate Motions to Dismiss Plaintiff Yuliya Miretskaya's ("Miretskaya") Amended Complaint from Defendant Rutgers, the State University of New Jersey ("Rutgers") and Defendant Dr. Carmencita T. Lanez ("Dr. Lanez," and together with Rutgers, "Defendants"). (ECF Nos. 58, 77.) Miretskaya opposed both motions (ECF Nos. 74, 101), and Dr. Lanez and Rutgers replied separately (ECF Nos. 79, 113). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Defendants' Motions.

**I.    BACKGROUND**

This suit arises out of the detention, confinement and ultimately the involuntary commitment of Miretskaya at the Raritan Bay Medical Center ("RBMC"). (*See generally* Am. Compl., ECF No. 38.) This matter implicates a lengthy list of defendants whose involvement in the relevant events spans the gambit from intimate to remote. As a result of his involuntary

commitment, Miretskaya seeks recovery for constitutional and statutory violations in addition to common law and statutory torts from several defendants including Rutgers, the employer of two doctors who evaluated or supervised the evaluation of Miretskaya, and Dr. Lanez who was involved in the process to determine that Miretskaya was committable. In chronicling the Amended Complaint's wide-ranging allegations, the Court accepts all well-pleaded facts as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

### A.   Miretskaya is Detained by Woodbridge Police

On July 22, 2018, Miretskaya, who was previously diagnosed with Asperger's Syndrome, called the Suffolk County mental health hotline and "sarcastically" conveyed that he "wanted to facilitate the honor killing of his third cousin's sister-in-law." (Am. Compl. ¶¶ 27-29, 33.) Distressed that Miretskaya could be a danger to himself or others, the hotline operator hung up and called the police. (*Id.* ¶ 36.) Later that same evening, police officers from the Woodbridge Police Department conducted a welfare check.[1] (*Id.* ¶ 39.) At least one of the officers indicated they were concerned that Miretskaya wanted to "hire a hit-man to murder [his] sister." (*Id.*) After a conversation with the officers, which included assertions from Miretskaya and his mother that he did not, in fact, have a sister, the police detained Miretskaya and took him to the Raritan Bay Medical Center for a psychiatric evaluation. (*Id.* ¶¶ 42, 45.)

### B.   Medical Experts Determine Miretskaya is "Likely Committable"

Upon arrival at RBMC, Miretskaya was processed, and given an opportunity to watch TV or go to his assigned bed. (*Id.* ¶ 48.) Miretskaya decided to watch TV, which lasted for a while

---

[1] Neither party provides briefing to the Court regarding whether the Woodbridge Police Department had jurisdiction to conduct the welfare check. As such, the Court does not address the issue here.

before sometime later, medical personnel directed him to bed. (*Id.* ¶¶ 50-51.) After an apparent disagreement as to whether Miretskaya could continue to watch TV, he was physically restrained and forcibly medicated. (*Id.* ¶¶ 52-57.) Thereafter, Dr. Lanez determined that Miretskaya was "likely committable" based on clinical notes from social worker Emma Locke. (*Id.* ¶ 69.) As a result, she called for an independent evaluation by Defendant Dr. La Shauna Richardson ("Dr. Richardson"), an employee of Rutgers University. (*Id.* ¶¶ 69, 71, 76.) Dr. Richardson was overseen by Defendant Dr. Greg Fitzpatrick, Director of the Acute Psychiatric Services (APS) for Rutgers University. (*Id.* ¶ 26.)

        **C.**      **Miretskaya is Involuntarily Committed**

Dr. Richardson's independent evaluation concluded that Miretskaya met the criteria for involuntary commitment. (*Id.* ¶ 82.) On July 25, 2018, Miretskaya was admitted to RBMC's "Center for Living." (*Id.* ¶ 96.) Ultimately, an ex parte petition for involuntary confinement was submitted to and approved by the Middlesex County Superior Court on July 27, 2018. (*Id.* ¶ 87.) Throughout Miretskaya's stay at the Center for Living, he was evaluated and attended to by several doctors and nurses who are named defendants in this suit, but whose conduct is not relevant to the motions before the Court. (*Id.* ¶¶ 97-107.) Ultimately, Miretskaya was determined to be "stable" and was discharged on August 3, 2018. (*Id.* ¶ 108.)

**II.**    **<u>LEGAL STANDARD</u>**

Federal Rule of Civil Procedure 8(a)(2)[2] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

3

failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

The Court addresses both Motions together. Dr. Lanez seeks to dismiss claims brought by Miretskaya for violations of due process rights under the United States Constitution, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the New Jersey Civil Rights Act ("NJCRA"), and common law torts of false imprisonment and negligent infliction of emotional distress. (*See generally*, Am. Compl. ¶¶ 110-88.) Similarly, Rutgers seeks to dismiss claims brought by Miretskaya for violations of due process rights under the United States Constitution, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the New Jersey Civil

Rights Statute as well as for the tort of negligent infliction of emotional distress. (*Id.*) The Court addresses each of these claims in turn.[3]

But before engaging the parties' arguments, the Court notes that Miretskaya is a *pro se* litigant. As such, the Court will liberally construe the pleadings in his favor. *See e.g.*, *Higgs v. Att'y. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Capogrosso v. The Supreme Ct. of N.J.*, 588 F.3d 180, 184 n.1 (3d Cir. 2009) ("[W]e remain mindful of our obligation to construe a *pro se* litigant's pleadings liberally.").

### A.    Negligent Infliction of Emotional Distress

The Court begins with the claims for negligent infliction of emotional distress brought "against all of the defendants" including Dr. Lanez and Rutgers. (Am. Compl. ¶ 188.) The Court first addresses the claim against Rutgers. In doing so, the Court finds dismissal warranted. Under the New Jersey Tort Claims Act ("NJTCA"), when asserting a state tort claim against a public entity or a public employee, such as Rutgers, a plaintiff must give notice of the claim within ninety days after the cause of action has accrued. *See* N.J. Stat. Ann. § 59:8-8; *Konah v. City of Newark*, No. L-962-10, 2011 WL 1598957, at *2 (N.J. Sup. Ct. App. Div. Apr. 29, 2011); *Brown v. Twp. of Neptune*, No. 11-7162, 2014 WL 3517776, at *7 (D.N.J. July 15, 2014). This notice requirement applies equally to common law intentional and negligent tort claims. *Abdur-Raheem v. Lanigan*,

---

[3] The Court does not address any statute of limitations defenses. Motions to dismiss are crude instruments for fact-intensive affirmative defenses like statute-of-limitations, so to be invoked at the motion-to-dismiss stage, the Amended Complaint must unequivocally give rise to that defense. *See Hull v. Glob. Digit. Sols., Inc.*, No. 16-5153, 2017 WL 6493148, at *8 (D.N.J. Dec. 19, 2017) (reasoning that statute-of-limitations defenses "are typically fact intensive, and thus, courts are reluctant to dismiss a complaint as untimely prior to discovery" (citations omitted)). Because this matter raises complex and fact-intensive relation back questions under Rule 15(c), the Court finds it prudent to address the Amended Complaint on its merits. *See* Fed. R. Civ. P. 15(c).

No. 18-4259, 2019 WL 1547274, at *3 (D.N.J. Apr. 9, 2019). Plaintiffs who do not comply with this requirement are "forever barred" from recovering on their claims. *See* N.J. Stat. Ann. § 59:8-8. Failure to file a notice of claim is a ground for dismissal at the motion-to-dismiss stage. *See William v. Westampton Police Dep't*, No. L-1144-13, 2014 WL 5393184, at *3 (N.J. Sup. Ct. App. Div. Oct. 24, 2014).

Here, Miretskaya's negligent infliction of emotional distress claim must be dismissed against Rutgers because he does not allege that he filed the required notice of claim. *But see* N.J. Stat. Ann. § 59:8-3. Miretskaya neither addresses Rutgers' contention that he failed to file a notice of claim nor demonstrates that he filed one. Because there is no allegation that a notice of claim has been filed with Rutgers, despite two bites at the apple, Miretskaya's claim against Rutgers is dismissed for lack of jurisdiction. *See Bethea v. Roizman*, No. 11-254, 2012 WL 2500592, at *7 (D.N.J. June 27, 2012) (dismissing plaintiff's state law tort claims for failure to plead compliance with the notice requirement under the Tort Claims Act).

Further, the negligent infliction of emotional distress claim against Dr. Lanez must be dismissed because it is group pled. Group pleadings are insufficient to sustain a claim as a matter of law. *Pushkin v. Nussbaum*, No. 12-324, 2017 WL 1591863, at *7 (D.N.J. Apr. 28, 2017) ("[G]roup pleading is impermissible.") More specifically, courts in this district consistently hold that group pleading does not satisfy the plausibility requirement of Rule 8. *See, e.g., Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (explaining that group pleading fails to put defendants on notice of the claims against them); *Dante v. Schwartz*, No. 20-1047, 2022 WL 1104996, at *3 (D.N.J. Apr. 13, 2022) ("Group pleading fails to meet the plausibility requirement"); *Frazier v. Kuhn*, No. 22-2781, 2022 WL 2235884, at *7 (D.N.J. June 22, 2022) (pleading that all defendants committed a single violation does "not satisfy

the plausibility standard"). Failure to identify each defendant's role for the alleged wrong is insufficient. *Pushkin*, 2017 WL 1591863, at *7.

To sustain a claim for negligent infliction of emotional distress, a plaintiff must adequately allege that "(1) the defendant had 'a duty of reasonable care' to the plaintiff; (2) the defendant breached said duty; (3) the 'plaintiff suffered severe emotional distress'; and (4) the breach proximately caused the plaintiff's injury." *Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 412 F. Supp. 3d 462, 471 (D.N.J. 2019). Because the allegation is group pled, even construing the Amended Complaint liberally, the Court is unable to address what of Dr. Lanez's conduct caused Miretskaya to suffer emotional distress. Any effort to do so would be pure conjecture. As such, the group pleading of intentional infliction of emotional distress is insufficient to survive dismissal.

### B. Federal and State Constitutional Violations

Next, the Court addresses the Amended Complaint's federal and state constitutional claims. (Am. Compl. ¶¶ 110-127, 138-142.) The federal claims are brought under 42 U.S.C. § 1983, "which provides a cause of action for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (quoting *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002)). Specifically, Miretskaya claims that both his procedural and substantive constitutional due process rights were violated. Miretskaya also brings state constitutional claims under the NJCRA. It should be noted that "this Court has repeatedly interpreted the NJCRA analogously to § 1983." *Seidle v. Neptune Township*, No. 17-4428, 2021 WL 1720867, at *11 (D.N.J. May 1, 2021) (quoting *Wang v. N.J. State Police*, No. 18-11933, 2019 WL 3887126, at *8 n.5 (D.N.J. Aug. 19, 2019)). As such, the following analysis applies to both the state and federal claims.

The Fourteenth Amendment's Due Process Clause provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Due

process can be violated substantively or procedurally. "[T]he . . . substantive component bars . . . certain arbitrary, wrongful governmental actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 72 (1992) (citations omitted). The relevant actions are those that are "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Conduct which shocks the conscience is only that which is "the most egregious official conduct" and is intended to injure in a manner "unjustifiable by any government interest." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)); *Lewis*, 523 U.S. at 849. As it pertains to involuntary confinement, the Third Circuit has affirmatively held that "the appropriate test for assessing liability in the context of involuntary commitment decisions is the 'shocks the conscience' standard." *Obado v. UMDNJ, Behav. Health Ctr.*, 524 F. App'x 812, 815 (3d Cir. 2013) (citations omitted).

In addition to a substantive component, the Due Process Clause also has a procedural component. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law." *Wood v. Hogan*, No. 13-2453, 2014 WL 1790283, at *5 (D.N.J. May 6, 2014) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006)).

Because Rutgers is a government entity and Dr. Lanez is an individual person, the constitutional claims against Defendants are necessarily considered separately. First, Miretskaya alleges that Rutgers is vicariously liable for the alleged constitutional violations of two of its employees, Dr. Richardson and Dr. Fitzpatrick, who are both named Defendants in this litigation.

8

(Am. Compl. ¶¶ 118, 142.) But "[u]nder § 1983, a government entity, such as Rutgers, cannot be held liable for the actions of its employees on a theory of respondeat superior." *Harel v. Rutgers, State Univ.*, 5 F. Supp. 2d 246, 267 (D.N.J. 1998) (citing *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691 (1978)). To validly state a constitutional claim against Rutgers, Miretskaya must allege a constitutional deprivation resulting from Rutgers's policies or customs. *See e.g.*, *Monell*, 436 U.S. at 691. "A government policy or custom can be established in two ways: (1) a decision-maker with final authority to set a policy with respect to the action exercises such authority; or (2) certain practices are so well-settled as to 'virtually constitute law' even if there is no official policy." *Sharp v. Kean Univ.*, No. 14-423, 2014 WL 6908775, at *4 (D.N.J. Dec. 8, 2014) (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).

Here, the Amended Complaint pleads neither avenue to establish a policy or custom that sufficiently violates constitutional rights. Instead, the Amended Complaint relies solely on vicarious liability and the doctrine of respondeat superior. (*See* Am. Compl. ¶¶ 25-26, 118.) That is, Miretskaya alleges that Dr. Richardson, a Rutgers employee, erroneously concluded that Miretskaya met the criteria for an involuntary commitment. (*Id.* ¶ 82.) Miretskaya claims, in part, that the conclusion was in violation of N.J.A.C. § 10:31-2.3(f)(3)(ii), which states that "[w]here the consumer is dangerous by reason of a mental illness, but is willing and able to consent to treatment, the screening certificate should not be completed."[4] (*Id. See also* Miretskaya's Opp'n Br. to Rutgers Mot. to Dismiss 10.) Rather, the Court makes no assessment as to the sufficiency (or validity) of that statutory claim. But rather, the Court simply finds that nothing in the Amended Complaint alleges that Rutgers had either an express policy or an established custom that was the

---

[4] The screening certificate was ultimately submitted to the relevant court tasked with ordering involuntary commitment. (Am. Compl. ¶ 87.)

impetus for the alleged constitutional violation. The closest Miretskaya comes to alleging a custom or policy is the use of "Rutgers' IFSS" program. (Am. Compl. ¶¶ 83-84.) That program contacts and supports families who have relatives involved in the healthcare system for mental health challenges. But, beyond the mere mention of IFSS, Miretskaya does not allege that the system catalyzed or sanctioned any constitutional violation. As such, Miretskaya did not adequately plead that Rutgers violated either his procedural or substantive constitutional due process rights.[5]

Next, the Court finds that the constitutional claims against Dr. Lanez are insufficiently pled. To recap, Miretskaya must plead behavior "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience.'" *Deavers v. Santiago*, 243 F. App'x 719, 722 (3d Cir. 2007) (quoting *Lewis*, 523 U.S. at 847 n.8 (1998)). "Whether an incident 'shocks the conscience' is a matter of law for the courts to decide." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 174-5 (3d Cir. 2004) (citing *Rochin v. California*, 342 U.S. 165, 172 (1052)). Here, the Complaint is devoid of facts indicating that Dr. Lanez engaged in behavior that would "shock" the Court's conscience. The Complaint alleges that Dr. Lanez "made the decision to call the APS screener." (Am. Compl. ¶ 69.) But even if Dr. Lanez never personally evaluated Miretskaya and relied upon information provided by a social worker, as alleged in the Amended Complaint, that still fails to shock the conscience. (*Id.* ¶ 113. *But see e.g., Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807 (3d Cir. 1997) ("[I]t is perfectly acceptable, in arriving at a diagnosis, for a physician to rely

---

[5] In his opposition brief, Miretskaya includes factual allegations that appear nowhere in the Amended Complaint or its exhibits, including that Rutgers is "responsible for providing continuing education, certification, and recertification for certified screener for the entire State of New Jersey," which presumably infers that a policy or custom exists. This Court, however, is "confined to the four corners of the complaint when evaluating its sufficiency," *Tri3 Enters. LLC v. AETNA, Inc.*, 535 F. App'x 192, 195 (3d Cir. 2013), and, moreover, these allegations do not establish that the Rutgers training program was the impetus for a constitutional violation. *See also Moore v. Beers*, 121 F. Supp. 3d 425, 431 (D.N.J. 2015) (dismissing *pro se* complaint when "[t]he supplemental allegations in her opposition brief . . . cannot save the state of her current complaint).

on examinations and tests performed by other medical practitioners.").) Moreover, even if the Court were to agree that Dr. Lanez's opinion was misguided, or that some other type of medical alternative was available at the time, "[m]ere negligence is never sufficient for substantive due process liability." *Nicini v. Morra*, 212 F.3d 798, 810 (3d Cir. 2000) (citing *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).

Construing the Amended Complaint liberally, Miretskaya may be alleging that Dr. Lanez's decision to initiate the independent state-mandated APS screening as alleging a constitutional procedural violation. (Am. Compl. ¶ 69.) But Miretskaya makes no claim that the decision was *procedurally* improper. In fact, Dr. Lanez's decision to initiate an independent screening was in accordance with State procedures that require oversight for involuntary commitments. (*Id.* ¶ 77 ("In accordance with New Jersey State mental health statutes, a 'Certified Screener' serves to independently assess whether a person has a mental illness, is dangerous to self, to others, or to property, and is committable to involuntary hospitalization.").) Far from pleading a procedural deficiency, Miretskaya simply puts forth his disagreement with the basis for Dr. Lanez's decision. He does not charge that Dr. Lanez's conduct was procedurally improper or deficient. As such, Miretskaya did not sufficiently plead enough facts to support a claim for relief on procedural due process grounds.

### C.     Americans with Disabilities Act and Rehabilitation Act Violations

Moving on, the Court next addresses Miretskaya's claims under Title II of the ADA and Section 504 of the RA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his

disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Consequently, save certain exceptions, a showing of discrimination under Section 504 of the Rehabilitation Act is identical to that under Title II of the ADA." *Obado*, 2012 WL 12903880, at *9. As such, the following analysis applies to both claims.

To succeed under the ADA (or the RA), a plaintiff must demonstrate: "(1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Dalton v. Karanfil*, No. 19-17645, 2021 WL 879933, at *5 (D.N.J. Mar. 9, 2021) (quoting *Bowers v. NCAA*, 475 F.3d 524, 553 n.31 (3d Cir. 2007)). Notably, "an employer can be vicariously liable for its employee's ADA and RA violations." *Ali v. City of Newark*, No. 15-8374, 2018 WL 2175770, at *5 (D.N.J. May 11, 2018) (citations omitted). As such, Rutgers can be held liable for the actions of employees Richardson and Fitzpatrick.

As an initial matter, the parties agree that Miretskaya is a qualified individual with a disability. (Def.'s Moving Br. 12.) Similarly, Defendants do not contest that Miretskaya was excluded from a benefit of a service, program, or activity of a private entity. As such, the only question before the Court at this stage is whether the Amended Complaint sufficiently alleges that Miretskaya was denied a benefit *because of* his disability.

At the outset, it is worth noting that there can be a cause of action where a plaintiff alleges that he was involuntarily committed because of a disability stereotype. *See Obado*, 2012 WL 12903880, at *9 (recognizing potential ADA claim for involuntary commitment "based on a stereotyped view of the mentally ill" (quoting *Bolmer v. Oliveira*, 594 F.3d 134, 149 (2d Cir.

2010)); *see also Tennessee v. Lane*, 541 U.S. 509, 524-25 (2004) ("[T]his Court's cases . . . have identified unconstitutional treatment of disabled persons by state agencies in a variety of settings, including unjustified commitment" to fall under the ADA.).

Starting with Rutgers, here, Miretskaya does not adequately allege that employees Richardson and Fitzpatrick impermissibly discriminated against him due to his disability when they made their decisions. Most importantly, Miretskaya's Complaint does not allege that Richardson and Fitzpatrick even knew that he had Aspergers Syndrome. (*See generally* Am. Compl.) Construing the Amended Complaint liberally, the Court may infer that in the course of conversations between Miretskaya's mother and Dr. Richardson, Miretskaya's disability was disclosed. (*See* Am. Compl. ¶ 83.) But even if Richardson and Fitzpatrick knew of his disability, Miretskaya fails to allege "discriminatory animus on the part of [Rutgers] or [Richardson or Fitzpatrick]." *Obado*, 524 F. App'x at 817. What's more, "[Miretskaya] points to no discriminatory policies, contemporaneous statements, or any circumstantial evidence suggesting [Rutgers] or [Richardson or Fitzpatrick] acted under the assumption that all individuals with mental illness . . . require involuntary commitment." *Id.*

At best, Miretskaya alleges that Richardson made "prejudicial and baseless judgments regarding [his] 'dangerousness'" and "stereotypical and prejudicial allegations regarding [his] mental state, alleging that he was 'presenting with symptoms of psychosis'" or that he had 'disorganized schizophrenia.'" (Am. Compl. ¶ 130.) Those claims, without alleging more, are conclusory and speak to Miretskaya's dissatisfaction with the diagnosis rather than discriminatory intent. Notably, Miretskaya does not allege any facts that the decisions were prejudicial or based on any stereotypes. Simply stating an action was prejudicial does not make it so. At bottom, "[t]he numerous grievances voiced in [Miretskaya's Amended] Complaint and subsequent submissions

13

do not suggest that he has been denied services or discriminated against because of his disability." *Jackson v. Domzalski*, No. 13-4462, 2014 WL 11395168, at *1 (D.N.J. Aug. 26, 2014). Rather, the Amended Complaint suggests Miretskaya disagrees with the methods and conclusions of the doctors who examined him.

Similarly, Miretskaya does not sufficiently allege that Dr. Lanez was either aware that Miretskaya had Aspberger's Syndrome or that she made the decision to call the state authorized mental health screener due to discriminatory intent. Again, as set forth above, "[Miretskaya] points to no discriminatory policies, contemporaneous statements, or any circumstantial evidence suggesting [Dr. Lanez] acted under the assumption that all individuals with mental illness" need to be involuntarily committed. *Obado*, 524 F. App'x at 817. In conclusion, even construing the Amended Complaint liberally, Miretskaya failed to allege sufficient facts to state a claim under the ADA or RA.

### D.     False Imprisonment

Finally, Miretskaya alleges Dr. Lanez committed the common law tort of false imprisonment and violated the New Jersey false imprisonment statute. (Am. Compl. ¶¶ 110-27, 160-168.) To state a claim for false imprisonment, a plaintiff must plead (1) "an arrest or detention of the person against his or her will" and (2) "lack of proper legal authority or legal justification." *Hickox v. Christie*, 205 F. Supp. 3d 579, 603-04 (D.N.J. 2016) (quoting *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009)) (internal quotations omitted).

Here, Miretskaya fails to plausibly allege that Dr. Lanez acted without proper legal authority or justification. In support of the false imprisonment claim, Miretskaya's allegations include that Dr. Lanez did not exercise "due diligence" in ascertaining whether there were legitimate grounds to involuntarily commit him. (Am. Compl. ¶ 93.) Although Miretskaya professes that he believes Dr. Lanez should have conducted an independent evaluation, the Court

gleans no facts to support that Dr. Lanez's reliance on other professionals was without legal justification. Moreover, as previously explained, in a variety of contexts, courts have determined that relying on the medical opinions of colleagues is reasonable. *See e.g., Kannankeril*, 128 F.3d at 807 ("[I]t is perfectly acceptable, in arriving at a diagnosis, for a physician to rely on examinations and tests performed by other medical practitioners."); *In re Commitment of P.D.*, 2005 WL 3949879, at *3 (N.J. Super Ct. App. Div. Apr. 7, 2006) (holding that medical records are the "type of information upon which psychiatrists reasonably rely"). Miretskaya's disagreement with the procedure does not rise to the level that demonstrates Dr. Lanez acted without proper authority.

## IV.     CONCLUSION

The Court grants Defendants' Motions. It will issue an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE